UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KBC SIENNA LLC d/b/a COMFORT SUITES MABANK, TEXAS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:16-CV-2290-B |
| NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY and FELICIA ZIMMER, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion to Remand. Doc. 9. For the reasons that follow, Plaintiff's Motion is **GRANTED**.

## I.

## BACKGROUND

A.    *Factual Background*[1]

Plaintiff sued Defendants Nationwide Property and Casualty Insurance (Nationwide) and insurance adjustor Felicia Zimmer initially in Texas state court for violations of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Act (DTPA), breach of contract, and a breach of the duty of good faith and fair dealing. Doc. 1-1, Notice of Removal, Ex. A, Pl.'s Original Pet. 11–16 [hereinafter Pl.'s Original Pet.].

---

[1] The following factual summary is drawn from the parties' initial pleadings and from the parties' briefing on the Motion to Remand before the Court. Any contested fact is noted as such.

Plaintiff owns a Comfort Suites hotel (Property) in Mabank, Texas. Doc. 1-1, Pl.'s Original Pet. 1, 3. The Property is a three-story hotel with 70 guest rooms as well as amenities including an indoor pool, a business center, and a fitness center. *Id.* at 3. Plaintiff insured the Property with a Texas Commercial Property Policy (Policy) issued by Nationwide. *Id.* Nationwide allegedly represented to Plaintiff that the Policy would cover the full value of any loss and damage to the Property caused by covered perils, which include hail, wind, and some water intrusion. *Id.*

In April 2015, a hail and wind storm damaged the property. *Id.* at 4; Doc. 17, Defs.' Br. in Supp. of Defs.' Resp. ¶ 2 [hereinafter Defs.' Resp.]. Plaintiff asserts that the wind and hail storm's damage included harming the roof of the building and covered entryway, other exterior elements of the building including windows, and the storefront automatic sliding door.  Doc. 1-1, Pl.'s Original Pet. 4. Plaintiff also asserts that water intrusion damage occurred as a result of storm-created openings and affected interior ceilings, insulation, wallpaper, floors, and window openings. *Id.*

After the storm, Plaintiff submitted a claim to Nationwide for the damage caused. *Id.* Nationwide assigned Zimmer to adjust the claim. *Id.* Plaintiff alleges that Nationwide and Zimmer were not diligent in their handling of Plaintiff's claim because they failed to timely, reasonably, and accurately investigate and adjust Plaintiff's claim. *Id.* at 5. Specifically, Plaintiff asserts that Zimmer spent little time inspecting the Property and refused to inspect the roof herself, relying instead on "second-hand observations of a 'ladder assist' person." *Id.*  Zimmer allegedly determined some, but not all, damage to the building was caused by the storm. *Id.* at 6. As a result of Zimmer's alleged inadequate evaluation, Plaintiff argues that it was improperly denied full coverage for its loss. *Id.* at 5.

Nationwide does not dispute that Zimmer found some damage to be caused by the storm, but notes that Plaintiff was denied coverage because the damage Zimmer observed did not exceed the Policy's 1% deductible of $48,112.  Doc. 17, Defs.' Resp. ¶ 3. Furthermore, Zimmer did not factor in the alleged interior water damage because Nationwide and Zimmer argue that it was not covered by the Policy. *Id.* Plaintiff's public adjuster allegedly notified Nationwide that Plaintiff would dispute its estimate and provided its own estimate of damage totaling almost $400,000. *Id.* ¶ 4; Doc. 1-1, Pl.'s Original Pet. 7. Zimmer then re-inspected the Property but could not complete the task because Plaintiff's public adjuster allegedly ended it prematurely. Doc. 17, Def.'s Resp. ¶ 4. Plaintiff, on the other hand, argues that Zimmer continued to deny its claim, refused multiple requests to re-inspect the Property before actually doing so, arrived forty minutes late to the scheduled re-inspection, and refused to pay for the storm damage identified by Plaintiff's public adjuster. Doc. 1-1, Pl.'s Original Pet. 7; Doc. 18, Pl.'s Reply 5. Plaintiff filed suit one week after the re-inspection. Doc. 17, Def.'s Resp. ¶ 4.

B.     *Procedural Background*

Plaintiff initiated the present action by filing its Original Petition in the County Court at Law No. 2, Kaufman County, Texas in July 2016. Doc. 1, Notice of Removal ¶ 3. Defendants then removed the action to this Court on diversity grounds in August 2016. Doc. 1, Notice of Removal. Defendants argue that the Court has subject matter jurisdiction because Zimmer, a Texas resident, was fraudulently joined as a defendant to defeat diversity jurisdiction. *Id.* ¶¶ 4, 6. Plaintiff moved to remand the case, contending that Zimmer is a proper, non-diverse defendant. Doc. 9, Pl.'s Mot. to Remand 1. Defendants responded (Doc. 16), and Plaintiff replied (Doc. 18); therefore, the Motion

is ripe for review.

## II.

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). They possess only the power authorized by the Constitution and statute, which is not to be expanded by judicial decree. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 337 (5th Cir. 2004). District courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery,* 243 F.3d at 916.

A.    *Removal Jurisdiction*

The federal removal statute, 28 U.S.C. § 1441(a), allows a defendant to remove any civil action to federal court so long as that action falls within the district courts' original jurisdiction. This case was removed on the basis of diversity jurisdiction under 28 U.S.C. § 1332. Doc. 1, Notice of Removal ¶ 1. A district court has diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). But to invoke the statute, the parties must be completely diverse—both when plaintiff files his complaint and when defendant removes. *Mas v. Perry*, 489 F.2d 1396, 1398–99 (5th Cir. 1974). And no properly-joined-and-served defendant may be a citizen of the state where plaintiff brought the action. *See* 28 U.S.C. § 1441(b); *Gasch*, 491 F.3d at 281.

B.      *Improper Joinder*

If an in-state defendant is improperly joined, a court may disregard the in-state defendant's citizenship for the purpose of determining whether there is complete diversity for diversity jurisdiction. *Cuevas v. BAC Home Loans Serv., LP*, 648 F.3d 242, 249 (5th Cir. 2011) (citing *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005)).The burden to establish improper joinder is on the removing party, and it is a heavy one. *Cuevas*, 648 F.3d at 249.

To establish improper joinder, the removing party must demonstrate "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). Only the second way is before the Court today. Under the second method, the removing party meets its burden by showing that "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.*

Courts resolve whether a plaintiff has met his burden in one of two ways. The first way is to conduct a "Rule 12(b)(6)-type analysis," looking to the face of the complaint to assess whether it states a claim against the in-state defendant. *Id.* The second way is to "pierce the pleadings" and conduct a Rule 56-type analysis. *Id.* The latter approach, however, is appropriate only where the evidence reveals that the plaintiff has withheld facts relevant to the propriety of joinder. *Id.* As explained more fully below, the Court finds it inappropriate to conduct a Rule 56-type analysis and instead, proceeds with a Rule 12(b)(6)-type analysis of Plaintiff's Original Petition.

## III.

## ANALYSIS

Below, the Court will first address and reject Defendants' argument that a Rule 56-type analysis is appropriate here. Second, the Court will use the 12(b)(6) analysis to determine whether Plaintiff met its burden in pleading its Texas Insurance Code § 541.060(a)(2)(A) claim against Zimmer.[2] In its analysis, the Court finds that Plaintiff provided enough factual detail in its Petition to provide a reasonable basis for the Court to predict that Plaintiff will be able to recover against Zimmer. Thus, the Court finds that Plaintiff met its pleading burden, and Zimmer is a properly joined in-state defendant. Because Zimmer is a properly joined in-state defendant, removal by Defendants was improper.

### A.    *Rule 56-Type Analysis*

Before addressing whether Plaintiff has met its burden under a Rule 12(b)(6) analysis, the Court first rejects Defendants' argument that a Rule 56-type analysis would be more appropriate. Defendants argue that it is proper for the Court "pierce the pleadings" and consider evidence in its determination of improper joinder because Plaintiff allegedly misstated and omitted facts regarding Zimmer in its Petition. Doc. 17, Defs.' Resp. ¶ 6. The Fifth Circuit has cautioned that a Rule 56-type inquiry is appropriate "only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573–74. The

---

[2] While Plaintiff brings other claims under the Texas Insurance Code as well as claims for violating the Texas DTPA, for breach of contract and a breach of the duty of good faith and fair dealing, Doc. 1-1, Pl.'s Original Pet. 11–16, because the Motion can be determined on the analysis of § 541.060(a)(2)(A), alone, the Court need not consider Plaintiff's other claims.

Fifth Circuit provides examples of discrete facts including, "the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved if not true." *Id.* at 574 n.12.

Here, as to the claim under § 541.060(a)(2)(A) specifically, Defendants argue that Plaintiff made several mistakes in its Petition. Doc. 17, Defs.' Resp. ¶ 7. Defendants dispute Plaintiff's allegation that Zimmer spent little time inspecting the Property and assert instead, that Zimmer inspected the Property for an hour. *Id.* Defendants also dispute Plaintiff's allegation that Zimmer erred in refusing to inspect the roofs and assert instead, that it is customary in Zimmer's experience for an adjuster to rely on professional companies to evaluate damage caused to three-story commercial roofs. *Id.*

The Court finds it inappropriate to conduct a Rule 56-type inquiry into the evidence because the facts needed to resolve the joinder issue go beyond the kind of discrete and undisputed facts envisioned by the Fifth Circuit. *See Smallwood*, 385 F.3d at 574 n.12. Defendants' allegation that an hour was enough time to adequately inspect the building is a fact in dispute, and it is not easily proved because more evidence is necessary to determine how much time would have been adequate to inspect the building. And whether or not it was appropriate for Zimmer to rely on outside companies to help evaluate the roof is similarly disputed,[3] and it is not easily proved because more than Zimmer's sole assertion would be needed to determine the propriety of relying on an outside

---

[3] This issue is in dispute because Plaintiff argues that it is not common practice for ladder assist contractors to perform the duties of an adjuster and that no other insurance companies use ladder assist contractors to do the work of an adjuster. Doc 18, Pl.'s Reply 5.

company.

Besides running afoul of *Smallwood*'s direction to only pierce the pleadings for discrete and undisputed facts, the resolution of these disputed facts will likely determine whether or not Zimmer is ultimately liable under § 541.060(a)(2)(A). Therefore, the Court determines that any inquiry into the evidence to resolve Defendants' allegations would move the Court beyond jurisdiction and into a resolution on the merits. Thus, a Rule 12(b)(6) analysis is the appropriate method for determining whether Plaintiff has met its pleading burden.

B.     *Rule 12(b)(6) Analysis*

1.     Rule 12(b)(6) Legal Standard

In conducting a 12(b)(6)-type analysis of a petition originally filed in Texas state court, the Fifth Circuit recently held that federal pleading standards apply. *Int'l Energy Ventures Mgmt. LLC v. United Energy Grp. Ltd.*, 818 F.3d 193, 207–08 (5th Cir. 2016).

Rule 12(b)(6) authorizes the Court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

- 8 -

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

    2.    <u>Rule 12(b)(6) Application</u>

The Court must now determine whether Plaintiff sufficiently pled its Texas Insurance Code § 541.060(a)(2)(A) claim in its Petition. Section 541.060(a)(2)(A) prohibits the failure "to attempt in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear." Tex. Ins. Code § 541.060(a)(2)(A) (West, Westlaw through 2015 Sess.). An adjuster may be held personally liable for violations of this section. *See Denley Grp., LLC v. Safeco Ins. Co. of Ind.*, No 15-CV-1183, 2015 WL 5836226, at *4 (N.D. Tex. Sept. 30, 2015); *Linron Props., Ltd. v. Wausau Underwriters Ins. Co.*, No. 15-CV-0293, 2015 WL 3755071, at *5 (N.D. Tex. June 16, 2015). This Court has recognized that an insufficient investigation may well lead to an unfair settlement of an insurance claim in violation of § 541.060(a)(2)(A). *Denley*, 2015 WL 5836226, at *4. Additionally, this Court has concluded that § 541.060(a)(2)(A) applies only to conduct that precedes the settlement of a claim. *Thomas v. State Farm Lloyds*, 3:15-CV-1937-B, 2015 WL 6751130, at *4 (N.D. Tex. Nov. 4, 2015).

In order to support its claim, Plaintiff alleges in its Petition that Zimmer failed to make an attempt to settle Plaintiff's claim in a fair manner, even though she was aware of Nationwide's

liability to Plaintiff under the Policy. Doc. 1-1, Pl.'s Original Pet. 9. In its factual summary, Plaintiff goes into some detail about the claim process: Plaintiff alleges Zimmer spent little time inspecting the Property, gave cursory attention to the roofs, and refused to inspect the roofs herself. *Id.* at 5.

Defendants argue that Plaintiff failed to allege actionable facts against Zimmer. Doc. 17, Defs.' Resp. 11. Defendants assert that the parts of Plaintiff's pleadings that could arguably address Zimmer's conduct before the settlement of the claim are all legal conclusions couched as factual allegations. *Id.* at 12. In reply, Plaintiff focuses on how adjusters may be held personally liable under this section as well as how other decisions from this district considered similar allegations to those made by Plaintiff and that those courts found a reasonable basis to predict recovery. Doc. 18, Pl.'s Reply 7.

The Court finds that Plaintiff's allegations are sufficient. In its Petition, Plaintiff alleges that Zimmer failed to make an attempt to settle Plaintiff's claim in a fair manner, spent little time inspecting the property, and gave cursory attention to the roof. Doc. 1-1, Pl.'s Original Pet. 5, 9. These allegations are similar to those made by plaintiffs in factually analogous cases where the pleadings were found to be sufficient. In *Denley*, the plaintiff alleged that the adjuster failed to perform a complete investigation, failed to obtain a legal opinion when relevant, ignored the true facts of the claim, and unreasonably delayed investigation. 2015 WL 5836226, at *4. In *Martinez v. State Farm Lloyds*, the plaintiff alleged that the adjuster completed a substandard inspection, spent only twenty minutes investigating the claim, and undervalued the cost of repairs in its report. 2016 WL 4427489, at *3. Accepting Plaintiff's alleged facts as true, the Court finds that Zimmer's short inspection and her unsatisfactory examination of the roof suggest that the inspection was inadequate

and therefore the settlement was unfair. The Court finds, then, that Plaintiff's pleadings provide enough facts to give the Court a reasonable basis to predict that Plaintiff might be able to recover against Zimmer, and therefore, the pleadings are sufficient under the federal pleading standard.

## IV.

## CONCLUSION

Based on the foregoing, the Court concludes that Plaintiff has provided a reasonable basis to predict that Plaintiff might be able to recover against Zimmer under § 541.060(a)(2)(A) of the Texas Insurance Code and therefore that Zimmer was properly joined as a party in this matter. Because both Plaintiff and Zimmer are citizens of Texas, the Court lacks diversity jurisdiction over this case. Accordingly, the Court **GRANTS** Plaintiff's Motion to Remand and **ORDERS** that this case be remanded to County Court at Law No. 2, Kaufman County, Texas for further proceedings.

SO ORDERED.

SIGNED: November 17, 2016.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE